Martin v. Haling is the next case for argument. Mr. Andelman. Thank you, Your Honor. May it please the Court, my name is Robert Andelman and I represent the appellant, Suzy Martin, in this case. Ms. Martin's case should not have been dismissed in this case. Defendants published and republished statements that she's a criminal and that people should not do business with her or any company with which she's associated. They rendered her ineligible to even bid for the work on which she had built her business. And though Ms. Martin stood trial and was acquitted of any criminal conduct concerning the allegations in the OEIG report, which is not a mean feat in this building, defendants are generally not acquitted, defendants refused to withdraw their statements or give Ms. Martin an opportunity to clear her name, and so she filed this complaint to do so. Then- Are you making a claim under the state law of defamation? We are not, Your Honor, because unfortunately in Illinois executive branch municipal officers are immune from claims for defamation. Then disregarding the notice pleading rules, the district court went out of its way to dismiss her complaint before she had an opportunity to present evidence, and it was wrong for the district court to ignore or infer away her factual allegations. Its dismissal should be reversed. There are two core issues I want to focus on today, the primary one being that Ms. Martin has plausibly alleged that defendants' conduct, as frankly it was intended to do, has had a tangible impact on her employment opportunities. And that is the standard, a tangible impact on her employment opportunities. And second, that Ms. Martin alleged facts- Where does that standard come from? Well, originally, I believe it comes from Roth v. Board of Regents. This court, in its first decision recognizing this claim, in the reverses- Roth v. Board of Regents had absolutely nothing to do with defamation. I was talking about the tangible impact on employment- What did it have to do with the definition of a property interest? I was just talking about tangible impact on employment opportunities. It's also in this court's decision in Leary v. Lawler, which was the first time, I believe, that this court recognized these so-called stigma plus occupational liberty claims. There isn't any dispute in this record that Ms. Martin was stigmatized by the publication and then republicated. So you think the district judge was just making it all up when he said the detriment must be so great that somebody could no longer practice their chosen profession? What I think happened, Your Honor- There's certainly a lot of language in the cases to that effect. Well, there's language in the cases that use the terminology virtually impossible. What the district court did in this case was interpret that to mean actually impossible. And ultimately, the standard is one of tangible impact. So what is your best case for that? You're essentially saying the district court and this court, when we continue to describe this constitutional tort, just don't understand what the real rules are. Absolutely not, Your Honor. What I would do- So we've said this a lot of times, and what you've just said is, well, that should all just be ignored in favor of a different test. So my view is that when I read cases, I look to what they do and not just to the words, because judges are not legislators, and so it is what they hold, what they do, that matters. So when I look at the cases that have either allowed or not allowed these, mostly, by the way, on summary judgment, because almost all of the cases the parties cite here did state claims, but things like debarment by a single agency, that's not sufficient, like in Blackout Seal Coating, which I believe you wrote, Your Honor. Townsend v. Vallis, that was a summary judgment case. There was no evidence- I don't understand your test, because debarment by one agency is certainly material. It's a material detriment. Well, in Blackout, the point was it was only one municipal agency. Here, Ms. Martin was fired- It tells us that material detriment does not suffice. Well, the point is just debarment by CTA in that case, there was- Well, I think you need to focus your argument on what the courts are saying rather than a test that you will find very hard to take out of those cases. Your Honor, even in Leary v. Lawler, just to get back to sort of first principles in this, the issue there was a three-year suspension from an employer, their federal government, right, across all agencies is what this court said. And in that case, the court stated, we hold the loss of future employment opportunities, coupled with stigma, now burdening Leary, amounts to a foreclosure of opportunities reaching the level of a liberty interest. Those are the words that this court used in establishing the standard. In Townsend, where ultimately summary judgment was granted, the case went forward based on the fact that summary judgment was granted because there wasn't ultimately evidence of an attempt to find new work. In Chicago United Industries, it was an eight-day debarment. That's it, eight days. But it still stated a claim. It was only resolved on summary judgment. The problem in this case is that the district court did to Ms. Martin exactly what the defendants did. It refused to let her present evidence to try to make her case and clear her name. It went out of its way to find facts that weren't in the record and ignored the facts that were pleaded in order to reach a predetermined result. And that's wrong. She should have been allowed the opportunity to present her evidence and either at trial or summary judgment have the case resolved then. And I think here on the facts in this case, the allegations are that the OEIG intended to have a tangible impact on her. It issued its report before it completed its investigation, contrary to Illinois law, specifically to UIC only to prevent her from getting a new contract at UIC. And then UIC responded by saying, well, we could debar her, but that would require giving her notice and an opportunity, so we'll keep it quiet for you. But then they did a shadow debarment, which she didn't learn about until years later when a subcontractor told her, we'd like to hire you, but we've been told by UIC that we can't, because they avoided exactly the process that she was due. And the same thing happened with CHA. UIC republished the conclusions of the OEIG to CHA, and they debarred her without any process. And when she asked for a hearing and an opportunity to clear her name, as she had done in her criminal case where she was acquitted, they said nothing. They wouldn't give her a hearing. And the same thing with CPS. The intent here was to have a devastating impact on her business, and that's exactly what happened. And we pleaded specific facts. $21 million of contracts lost. A three-year, or more than a three-year, a multi-year bar that's still ongoing from contracting. This case is so far and above the fact patterns that have been held sufficient at least to get to summary judgment in the circuit, it was plain error for the district court to rule as he did. Large debate here, Counsel, on Chosen Field. Yes. Can you give another example of a particular localized geographical area that was in a Chosen Field? Your Honor, I can't give an example where it's only localized, but I know, for example, in Larry v. Lawler, the court said if you're locked out of federal employment, that's sufficient. In the Purdue case, Doe v. Purdue, it was just one university. And there, the case was allowed to go forward on a motion to dismiss. There was never a requirement, well, you know, what about Indiana University? What about University of Illinois? There wasn't that requirement. And similarly, another issue in Doe was ineligibility for ROTC, the scholarship, but the court didn't say, well, what other scholarships were available? The point is it had a material impact on the plaintiff, a tangible impact, which I would argue is ultimately the standard here, and the court held that was sufficient to at least state a claim, to give her the opportunity to make her evidence. And with regard to Chosen Field, you know, what we've alleged is these public sector contracts, the state and municipal contracts, they have unique bidding requirements. There's unique rules. They frankly give opportunities to women-owned businesses that don't exist in the private sector, and she had built her business around that. It was more than 80% of it. And in terms of tangible impact, we said, look, she lost $21 million of work that would have happened over a period of time for a company that had only $7 million in annual revenue. This was – it was virtually impossible for her to do it. She did it, but her constitutional rights should not vary based on her resiliency and strength or the money that she was willing to put in to completely retool her business. And that, Your Honor, is why we believe the district court erred, and she should be given this opportunity to present her evidence. If they can disprove it, if they can prove, you know, Chosen Field should be construed more narrowly, okay, what are the facts that allow that? But the district court doesn't have any knowledge about the elevator repair and maintenance business, and he wasn't in a position to define it as he did. Thank you, counsel. Thank you. Thank you. Mr. Sheffield. Good morning, Your Honors. Jonathan Sheffield representing Susan Hailing as Executive Inspector General and presenting argument on her behalf as well as on behalf of Michelle Casey, the Executive Director of the Executive Ethics Commission. I'll argue for up to seven minutes, and counsel for CHA will present argument for the remaining time. The board and Edwards are not presenting argument today. This court should affirm the dismissal of Martin's procedural due process claim because the district court properly concluded that she failed to plead to denial of her occupational liberty. To do so, Martin was required to plausibly allege that Appley's altered her legal status and made it virtually impossible for her to work in her chosen occupation. Martin failed to plead both elements of the claim as explained in the briefs of Hailing and Casey, and although her pleading problems are universal such as her implausible pleading that it was virtually impossible for her to continue her work, I will be specific to, my argument today will be specific to the report and its publication, the report issued by the Office of the Inspector General and publication of that by the commission. As the district court rightly noted, the allegations showed that it was not virtually impossible for Martin to find work in her chosen occupation, namely the elevator service and repair business. To plausibly allege that it was virtually impossible, she had to be frozen out of all meaningful employment opportunities in her field, and that's a high hurdle, this court has said, and she really failed for two reasons. The first, as we noted, is that she still remains employed in smart elevators. This is her claim, not a claim on behalf of smart elevators. She still works for the company, and smart elevators, the second reason, is still working in that same occupation, the elevator service. Why does that matter? Smart elevators is an independent entity, right? Just as Martin can't sue on behalf of smart elevators, I don't see why the state can use the fact that smart elevators is working against Martin. Martin is an employee and investor, but smart elevators is itself. Well, if smart elevators continued work in the elevator service and repair field doesn't show that it's virtually impossible, then her maintaining employment for the company must show that it's virtually impossible. The state didn't do anything to make the company fire her or suspend her. There wasn't a non-rehiring question, so if this court, it could either avoid having to decide that she can bring a claim on behalf of smart elevators. No, she can't, right? She is an investor, right? She certainly can't bring, and hasn't tried to bring, the shareholder's derivative claim, right? She's suing in her own name. Smart elevators is not a party. And so your honor, then it is not virtually impossible for her to continue working for smart elevators. Her career being the leader of this company has not been blocked or has not been stopped in any way. So she pleaded herself out of court by noting that she maintains this employment, that even if she herself lost some revenue because of the lost business, which is unclear in the complaint, that would not be enough either. And just to be clear, your honors, there was a question about tangible impact on employment opportunities being the standard. And of course, the standards really are virtual impossibility and altering legal status. And maybe that's what was meant by tangible, excuse me, tangible impact was altering legal status. But the OEIG's report did not do that to Martin herself or her business for what it's worth. I should have asked this question of your adversary. But is there any reason to distinguish between an inspector general's report and an indictment for this purpose? Yes, your honor. There is because the report is issued to a specific entity. The entity decides what corrective action to take. This is your honor is under Illinois law. Section 20 dash 50 B and C make clear that if the entity decides not to take some corrective action, My question obviously wasn't clear. Both the inspector general's report and an indictment charge crime. Martin was indicted. It's a charge of crime based on probable cause, but without a prior hearing. The question is whether there is a constitutional reason to distinguish between the two. Well, yes, your honor. Because the way that the report functions under Illinois law, it does not operate the same as a criminal indictment. The agency has the discretion to act. You're just not getting it. I'm not asking whether they are the same document. I'm asking whether there is a constitutional distinction between them so that it would be necessary to have notice and an opportunity for a hearing before one, but not the other. As I say, I should have asked this question of your adversary. I think that I think that there still is a constitutionally distinct distinction between the report and an indictment such that the report itself does not does not do anything to the individual. There are steps along the process that do, for instance, the university decision. Sounds like you're saying there's less need for a hearing before an inspector general's report than before an indictment. But we know what the process is for an indictment, and it does not involve an adversarial hearing. So, right. There is not an adversarial hearing before indictment, and that would change the legal status. So, again, the the difference here, though, is that there is an opportunity for for what it's worth under the Illinois regime for the opportunity to speak. But it's after the university gets that report and then decides, for instance, when the commission decides that it would publish the report, there is opportunity for that response. So this is really a first step in the regime. It would be more like maybe the. Your Honor, I feel the remainder of my time and ask that you affirm. Thank you, Mr. Sheffield. Miss Kelly. Patricia Kelly, on behalf of Chicago Housing Authority and accompanied here by counsel for Chicago Housing Authority, representing Mark Litchka and Michael Moran on the individual claims. Cynthia Harris. We join and adopt the arguments of Susan Hailing to affirm the district court ruling. Their brief was filed sort of. We were almost at the same time when we filed a brief. And so we now adopt that the arguments that they made in their written brief, as well as the arguments they've made before the court today. We also rely on briefs that we've joined in that we filed in our. We joined in arguments of the other defendants in support of the district court decision to dismiss the amended complaint with prejudice. We just want to raise a couple of minor relatively brief points. One, that under Palka versus Shelton, the court requires that. The just the potentially harmful information be disseminated publicly here. The appellant has stated that CHS that UIC republished to CHG to that UIC republished CHA. But what's lacking here is any publication by CHA itself. What the appellant has stated is that in their that an argument that they've actually exaggerated their own allegations. Specifically, at page six of their reply, they state the CHA told contractors who were potential employees, including CCCJV employers. I mean, including CCCJV that Martin engaged in bribery. CCCJV was actually the contractor who did business with CHA. In fact, that was because Martin was its subcontractor. Actually, they allege, though, in their complaint that on information and belief, unknown employees of CHA publicized statements in the OEIG report. This is in the appendix at page 16, paragraph 76. Their citation to Flores versus United Airlines did not help them. It confines the use of information and belief to matters that are peculiarly within the knowledge of the defendant. This is not the case here because Martin, through her company, Smart Elevators, had a relationship with her very contractor, CCCJV. We also wish to bring the court's attention to the fact that there's no factual basis, therefore, alleged for allegations that any communication by CHA resulted in a refusal by any contractor to do business with Martin through her company. There are no, as to the individual claims against Moran and Lychka, there are no allegations against them of acts outside of their duties as employees of either the Office of Inspector General of CHA or by Moran as Acting Procurement Officer at the time that he wrote the correspondence to Ms. Martin. Thank you, Ms. Kelly. The case will be taken under advisement and the court will be in recess. Your time has expired, counsel.